IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:24-cv-755-SMD |
| | ) | |
| FRANK M. BISIGNANO, | ) | |
| *Commissioner of Social Security*, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION & ORDER**

On September 9, 2022, Plaintiff Charles B. ("Plaintiff") proactively applied for Disability Insurance Benefits ("DBI") under Title II of the Social Security Act, alleging disability beginning December 1, 2021. Tr. 333-34. Plaintiff's application was denied at the initial administrative level and on reconsideration. Tr. 254-64, 269-74. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found he was not disabled. Tr. 7-39, 191-228. Plaintiff appealed to the Social Security Appeals Council ("Appeals Council"), which denied review. Tr. 1-6. Therefore, the ALJ's order became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff appeals that decision pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court AFFIRMS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 11); Def.'s Consent (Doc. 12).

## I.    STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is an SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238.

If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's

RFC, age, education, and work experience to determine if there are a significant number

of jobs available in the national economy he can perform. *Id.* at 1239. To determine if a

claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational

Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will

affirm the Commissioner's decision if the factual findings are supported by substantial

evidence and the ALJ applied the correct legal standards. *Kelley v. Apfel*, 185 F.3d 1211,

1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A

court may reverse the Commissioner's final decision when it is not supported by substantial

evidence, or the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215,

1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close

scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a mere

scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person

---

[3] The Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.    ADMINISTRATIVE PROCEEDINGS

Plaintiff was 52 years old on the date of the ALJ's decision. Tr. 32, 34. He has a high school education and past relevant work as a Field Artillery Man and Staff Sergeant. Tr. 383. Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), muscle spasms, sleep apnea, knee pain, back pain, shoulder pain, and arthritis. Tr. 382.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date. Tr. 21. At step two, the ALJ found Plaintiff has the severe impairments of PTSD, anxiety disorder, cervical and lumbar degenerative disc disease, and hypertension. Tr. 12-13. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. Tr. 13-19.

The ALJ proceeded to determine Plaintiff's RFC, finding he has the capacity to perform medium level work with additional functional limitations. Tr. 19-32. At step four, the ALJ found that Plaintiff could not perform his past relevant work. Tr. 32. However, at

4

step five, the ALJ considered Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), and found that other work existed which Plaintiff could perform. Tr. 32-34. This work included box maker, inspector, and stacker at the medium exertional level, and inspector, sorter, and hand packager at the light exertional level. Tr. 32-34. Accordingly, the ALJ found Plaintiff was not disabled from December 1, 2021, through the decision date. Tr. 34.

## IV.    PLAINTIFF'S ARGUMENTS

Plaintiff presents three issues for the Court's review:

(1) Whether the ALJ erred in her analysis of the supportability and consistency of a state agency medical consultant's opinion.

(2) Whether the ALJ erred by failing to recontact a consultative examiner because her mental examination report was inadequate or incomplete.

(3) Whether the ALJ wrongly rejected a treating provider's opinion because it did not comport with the regulatory definition of a medical opinion.

Pl.'s Br. (Doc. 27) p. 1.

## V.    ANALYSIS

In evaluating the persuasiveness of a medical opinion, an ALJ is required to consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). Because supportability and consistency are the most important factors considered, an ALJ must

5

articulate how she considered these factors for a medical source's opinion.[5] *See Simon v. Kijakazi*, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021); 20 C.F.R. § 404.1520c(a)-(c). An ALJ may—but is not required to—explain how she considered the other remaining factors. *Nix v. Saul*, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(b)(2)). The Social Security Regulations provide that a "medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion." 82 F. Reg. 5844, 5845 (Jan. 18, 2017) (emphasis added). "Thus, a medical opinion is unpersuasive if it is *either* unsupported by, *or* inconsistent with, the record." *Tracy F. v. O'Malley*, 2024 WL 1701572, at *3 (D. Idaho Apr. 19, 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022)) (emphasis added).

Plaintiff challenges the ALJ's evaluation of three opinions rendered by medical providers. First, Plaintiff argues that the ALJ improperly evaluated the opinion of Dr. E. Russell March ("Dr. March"), a state agency medical consultant, by failing to provide a sufficient analysis of the opinion's supportability and consistency. Pl.'s Br. (Doc. 27) pp. 6-9. Second, Plaintiff argues that the ALJ improperly evaluated the opinion of LPC Tatiana Parker ("LPC Parker"), a consultative examiner, because LPC Parker's report was

---

[5] For supportability, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be. 20 C.F.R. § 404.1520c(c)(1).

For consistency, "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

inadequate and incomplete, triggering the ALJ's obligation to recontact LPC Parker. *Id*. at 9-12. Third, Plaintiff argues that the ALJ improperly evaluated the opinion of NP Brandy Clary ("NP Clary"), a treating provider, because the opinion did not comport with the regulatory definition of a medical opinion. *Id*. at 13-15. The undersigned addresses the ALJ's evaulation of each opinion, in turn.

### A.    Dr. March

At the initial level of review, Dr. Victoria Hogan ("Dr. Hogan")—a state agency, non-examining consultative physician—reviewed Plaintiff's medical records and opined that Plaintiff could perform a range of medium work with some postural limitations. Tr. 230-37. The ALJ found Dr. Hogan's opinion "generally persuasive." Tr. 31. In so doing, the ALJ reasoned that although Dr. Hogan did not examine Plaintiff, she "provided specific reasons for her findings about [Plaintiff's] impairments." Tr. 30. In support of her opinion that Plaintiff could perform a range of medium work, Dr. Hogan explained:

> 50 YOM alleging Muscle Spasms; Sleep apnea; Knee pain; Back pain; Shoulder pain; & Arthritis. MRI from 2019 shows mild degenerative spondylosis throughout the lumbar spine xmost notable at L4/5 with mild to mod central canal and neural foraminal stenosis. PE: TTP lumbar spine and lower portion of thoracic spine. No current & detailed phys exam so CE was req'd & obtained from Dr. Babb. Exam dated 11/29/2022 noted cl c/o chronic back pain but according to Dr. Babb the cause of the pain is unknown. Noted cl is not followed by any orthopedic, pain specialist, or MH specialist at VA but he is currently drawing 100% SC through VA. V/S: BP 142/102, Ht 74.5", Wt 202 lbs. Exam noted cl ambulated nl & used no assistive device; nl abduction of shoulders with nl flexion/extension of wrists & elbows; anterior flexion of LS 100 deg, SLR 90 deg, nl passive ROM of hips, knees & ankles; nl gait; grip strength 5/5, sensory exam nl, reflexes nl, no tremor; no motor, sensory or reflex abn; no deformity of any ext; no assistive device. Dx: LBP of unknown etiology; undefined MH d/o not on any meds; elevated BP. Based on mild degen changes, c/o back pain, & elevated BP, case will

be rated an 03. CI should be able to function at the [medium exertional] level noted above.

Tr. 235.

At the redetermination level of review, Dr. March—also a state agency, non-examining consultative physician—reviewed Plaintiff's medical records, including records unavailable to Dr. Hogan, and opined that Plaintiff could perform a range of light work with some postural limitations. Tr. 239-248. The ALJ found Dr. March's more restrictive opinion "partially persuasive." Tr. 31. The ALJ reasoned that Dr. March's findings "are not entirely consistent with the preponderance of the medical evidence and are not fully supportable, especially as they conflict with Dr. Hogan's prior administrative medical findings." Tr. 31. In support of his opinion that Plaintiff could perform only light level work, Dr. March stated:

> 7/19/22 low back pain. MRI from 2019 shows mild degenerative spondylosis throughout the lumbar spine is most notable at L4/5 with mild to mod central canal and neural foraminal stenosis. PE: TTP lumbar spine and lower portion of thoracic spine.

Tr. 244. Additionally, the ALJ noted that "[b]eing a nonexamining physician, Dr. March has no relationship with [Plaintiff]." Tr. 31.

Plaintiff argues that the ALJ's evaluation of Dr. March's opinion is improper because she failed to properly address the opinion's supportability and consistency. Pl.'s Br. (Doc. 27) p. 7. In particular, Plaintiff contends that the ALJ improperly discounted Dr. March's opinion—which was formulated at the reconsideration level and based on 705 pages of medical records—because it conflicted with Dr. Hogan's opinion—which was formulated at the initial review level and based on only 96 pages of records. *Id.* at 7-8.

Plaintiff asserts that "it is hard to fathom that Dr. Hogan's opinion of a 96-page medical record could possibly be more accurate and account for the entirety of Plaintiff's limitations than Dr. March's opinion, especially when Dr. March's opinion was based on over 800 pages of medical evidence." Reply (Doc. 29) p. 2. Further, Plaintiff argues that the ALJ improperly discounted Dr. March's opinion based on his status as a non-examining physician because the ALJ accepted Dr. Hogan's opinion, although she, too, did not examine Plaintiff. Pl.'s Br. (Doc. 27) p. 8.

To begin, the Court finds that the ALJ properly evaluated Dr. March's opinion regarding its supportability and consistency. In evaluating Dr. March's opinion, the ALJ found it "not entirely consistent with the preponderance of the medical evidence and [] not fully supportable," particularly considering that the opinion conflicted with Dr. Hogan's, whose opinion was supported by a detailed discussion of the objective medical evidence— including both MRI findings and physical examination results. Tr. 31, 235. In contrast to Dr. Hogan's explanation as to why Plaintiff could perform medium work, Dr. March's opinion that Plaintiff could perform light work was supported only by a brief description of Plaintiff's MRI findings and a lone statement of "low back pain." Tr. 31. Read in combination with the entirety of the ALJ's opinion—which includes thorough discussions of medical imaging, physical examinations, and self-reports of manageable pain—these explanations sufficiently address the supportability and consistency of Dr. March's opinion as required under the Social Security Regulations (the "Regulations"), and are substantial evidence supporting the ALJ's finding that the opinion was only "partially persuasive."

Further, the Court rejects Plaintiff's suggestion that the ALJ erred in finding Dr. Hogan's opinion more persuasive than Dr. March's because Dr. Hogan reviewed more records than Dr. March. The Regulations direct ALJs to evaluate the persuasiveness of medical opinions primarily based on supportability and consistency—not on the number of pages of medical evidence before them. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). And although Dr. March reviewed additional medical records that were unavailable to Dr. Hogan, he does not indicate that those additional records formed the basis for his more restrictive work limitations. Instead, Dr. March principally relied on the same MRI findings and complaints of low back pain discussed by Dr. Hogan. *Compare* Tr. 235 *with* Tr. 244. Thus, to the extent Plaintiff contends the ALJ necessarily erred in finding Dr. Hogan's opinion more persuasive than Dr. March's because of the availability of additional evidence, the Court finds the argument unpersuasive.

Additionally, Plaintiff argues that the ALJ inconsistently evaluated Dr. Hogan and Dr. March's opinions by discounting Dr. March's opinion because he was a non-examining physician while finding Dr. Hogan's opinion more persuasive even though she, too, was a non-examining physician. Pl.'s Br. (Doc. 27) p. 8. The Court disagrees. In evaluating Dr. Hogan's opinion, the ALJ acknowledged that Dr. Hogan was a non-examining physician but nevertheless found her opinion generally persuasive because it was supported by specific reasoning and grounded in the objective medical evidence. Tr. 30. Likewise, in evaluating Dr. March's opinion, the ALJ acknowledged that Dr. March had no examining relationship with Plaintiff but found the opinion partially persuasive because it was "not entirely consistent with the preponderance of the medical evidence" and was "not fully

supportable." Tr. 31. In both instances, the ALJ's evaluation turned on the regulatory factors of supportability and consistency, not on the absence of an examining relationship. Therefore, the Court rejects Plaintiff's argument that the ALJ applied the non-examining relationship factor in a contradictory manner.

In conclusion, the Court finds that the ALJ did not reversibly err in evaluating Dr. March's opinion under § 404.1520c, and finds that substantial evidence supports the ALJ's determination that Dr. March's opinion was partially persuasive and less persuasive than Dr. Hogan's.

### B.     LPC Parker

"[T]he ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). When the evidence in the record is insufficient or inconsistent such that the Commissioner cannot make a disability determination, a claimant may be required to submit to a consultative examination. *See* 20 C.F.R. § 404.1519a. Importantly, "[t]he facts in a particular case and the information and findings already reported in the medical and other evidence of record will dictate the extent of detail needed in the consultative examination report for that case. Thus, the detail and format for reporting the results of a purchased examination will vary depending upon the type of examination or testing requested." 20 C.F.R. § 404.1519n(b).

The Regulations provide that "[a] complete consultative examination is one which involves all the elements of a standard examination in the applicable medical specialty." 20 C.F.R. § 404.1519n(c). "When the report of a complete consultative examination is involved, the report should include the following elements:

11

(1) [the claimant's] major or chief complaint(s);
(2) A detailed description, within the area of specialty of the examination, of the history of [the claimant's] major complaint(s);
(3) A description, and disposition, of pertinent 'positive' and 'negative' detailed findings based on the history, examination and laboratory tests related to the major complaint(s), and any other abnormalities or lack thereof reported or found during examination or laboratory testing;
(4) The results of laboratory and other tests (e.g., X-rays) performed according to the requirements stated in the Listing of Impairments (see appendix 1 of this subpart P);
(5) The diagnosis and prognosis for [the claimant's] impairment(s)[.]

20 C.F.R. § 404.1519n(c)(1)-(5). Importantly, "[w]hen the evidence . . . does not require a complete consultative examination . . . [the Commissioner] may not require a report containing all of the elements in paragraph (c)." 20 C.F.R. § 404.1519n(e). If it is determined that a consultative examination is inadequate or incomplete, the Commissioner will recontact the medical source and ask the source to "furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p(b).

In December 2022, Plaintiff submitted to a consultative mental health examination conducted by LPC Parker. Tr. 24; 698-703. The referral form submitted for LPC Parker's review sought information regarding, *inter alia*, a history of Plaintiff's past and present illness; his report of his functionality; and his mental status. Tr. 700-01. The form further asked LPC Parker to provide details regarding any abnormal findings as to Plaintiff's orientation, thought content, thought process, memory, fund of information, concentration, abstract thinking, insight and judgement, and estimated level of intelligence. Tr. 701-03. Finally, the form asked LPC Parker for Plaintiff's diagnosis but did not ask for Plaintiff's prognosis. Tr. 703. Instead, the form requested information about Plaintiff's ability to manage funds. Tr. 703.

In evaluating Plaintiff's memory, LPC Parker's report indicates that Plaintiff was able to repeat the words "Apple, Tree, Penny" after five minutes. Tr. 702. The report also shows that Plaintiff was asked to complete a digit span test by repeating the following numbers backwards: 87, 649, 8537, to which he responded: 78, 964, 5873. Tr. 702. While LPC Parker provided Plaintiff's response to the digit span test, she did not note that the response was incorrect. Tr. 702. Similarly, in evaluating Plaintiff's concentration, LPC Parker's report indicates that Plaintiff spelled "WORLD" backward and forward; "was able to adhere to instructions without difficulty of concentration" when asked to perform a three-step command; and when asked to perform serial sevens,[6] replied: 100, 98, 96, 94. Tr. 702. While LPC Parker provided Plaintiff's response to the serial sevens test, she did not note that the response was incorrect. Tr. 702.

Plaintiff contends that LPC Parker's report was inadequate or incomplete because it failed to include (1) a description of pertinent positive and negative detailed findings based on the history, examination and laboratory tests related to Plaintiff's major complaints, and any other abnormalities or lack thereof reported or found during examination or laboratory testing; and (2) Plaintiff's prognosis. Pl.'s Br. (Doc. 27) p. 10. Because the report purportedly lacked this categorical information, Plaintiff argues that the ALJ had a duty to recontact LPC Parker for further clarification. *Id*. at 9-12. However, as set forth above, the Regulations specifically contemplate that when the evidence needed "does not require a complete consultative examination," a consultative examiner's report

---

[6] The serial sevens test "involve[s] the serial subtraction of seven beginning with the number 100." *Proenza v. Saul*, 2020 WL 6162850, at *5 n.3 (S.D. Fla. Aug. 4, 2020).

is not required to contain all of the elements set forth in § 404.1519n(c). Accordingly, the absence of one or more of the listed items in section (c) does not, by itself, render a consultative examination report inadequate or incomplete, causing Plaintiff's argument to fail. Nonetheless, even assuming the omitted information should have been included in the report, Plaintiff has not shown that the omission created an evidentiary gap preventing the ALJ from evaluating Plaintiff's mental impairments, nor has he shown that inclusion would have altered the disability determination. *See id*. at 12 (arguing in conclusory fashion that the lack of this information created an "evidentiary gap result[ing] in clear prejudice"). As such, Plaintiff has not shown that the ALJ's failure to recontact LPC Parker constitutes clear prejudice or unfairness, which is required for this Court to remand. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (In determining whether it is necessary to remand a case for development of the record, a court should consider whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.).

Plaintiff also argues that the ALJ was required to recontact LPC Parker because her report did not explicitly state that Plaintiff erred when performing the digit span and serial sevens tests. Pl.'s Br. (Doc. 27) pp. 10-12. Because the report failed to note these conclusions, Plaintiff argues that it caused the ALJ to incorrectly state that Plaintiff "was able to do the . . . digit span backward and forward" and that he "was able to perform serial sevens." *Id*. at 11; Tr. 24. Had the ALJ recontacted LPC Parker and requested this information, Plaintiff contends that the ALJ would have recognized these abnormalities and "would have properly assessed Plaintiff's mental limitations." Pl.'s Br. (Doc. 27) p. 12.

14

The Court finds that the omission of explanatory comments regarding Plaintiff's test results does not render LPC Parker's report inadequate or incomplete. Indeed, while the report did not explicitly state that Plaintiff was unable to perform the digit span and serial sevens tests, it did contain Plaintiff's *exact responses* to those tasks. Thus, the report contained sufficient information for the ALJ to evaluate Plaintiff's mental functioning without recontacting LPC Parker, particularly considering the wealth of other evidence cited by the ALJ in assessing Plaintiff's mental limitations. As such, the report was neither inadequate nor incomplete, and the ALJ did not reversibly err by failing to recontact LPC Parker for additional information.[7]

To be sure, Plaintiff's argument may be more accurately framed as to whether the ALJ's mischaracterization of evidence provided in LPC Parker's report is reversible error. But even if the argument is so framed, Plaintiff fails to show that he was prejudiced by the mischaracterization of the test results. Importantly, the ALJ did not solely rely upon Plaintiff's performance on the digit span and serial sevens tests to formulate Plaintiff's mental limitations. Instead, the ALJ relied on other findings from the same examination conducted by LPC Parker, including Plaintiff's ability to recall three words after five minutes, spell "WORLD" forward and backward, and follow a three-step command

---

[7] *See, e.g.*, *Stinson v. Kijakazi*, 565 F. Supp. 3d 1219, 1228 (M.D. Ala. 2021) (finding that a consultative examiner's report was not incomplete because it failed to specify the claimant's physical limitations); *Thomas v. Bisignano*, 2026 WL 1034391, at *5-6 (M.D. Ala. Apr. 16, 2026) (finding that the evidence before the ALJ was sufficient for the ALJ to properly assess the claimant's disability without needing to contact the consultative physician because the plaintiff failed to show evidentiary gaps that resulted in unfairness or clear prejudice); *Daniel R. v. Comm'r, Soc. Sec. Admin.*, 2022 WL 16707088, at *6 (N.D. Ga. Jan. 18, 2022) ("Moreover, while an ALJ has the discretion to recontact a medical source, request additional existing records, or ask for more information, he is not required to develop the record further when the existing record provides support for the RFC determination.").

without difficulty. Tr. 24. In addition, the ALJ found persuasive the opinions of two non-examining state agency consulting psychiatrists, Tr. 31, both of whom reviewed LPC Parker's examination and other evidence to conclude that Plaintiff had mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace, Tr. 231, 240. Plaintiff does not identify any evidence suggesting that obtaining the omitted explanatory comments would have resulted in greater functional limitations or would otherwise alter the ALJ's disability determination, and the Court will not speculate otherwise.

At most, Plaintiff identifies an omission in LPC Parker's narrative and a factual mischaracterization by the ALJ regarding two testing exercises. On this record, however, Plaintiff has not demonstrated that either alleged error prejudiced him by creating an evidentiary gap or altering the ALJ's disability determination. Therefore, remand is not warranted.

### C.   NP Clary

On March 8, 2024, Brandy Clary, NP—who is Plaintiff's treatment provider—completed a Physical Residual Functional Capacity Questionnaire ("PRFCAQ") on Plaintiff's behalf. Tr. 530-538. In the report, NP Clary diagnosed Plaintiff with chronic back, neck, and shoulder pain. Tr. 532. She opined that Plaintiff suffered from decreased strength in his upper extremities, was capable of low stress jobs, could walk two city blocks without rest or severe pain, and needed a job that permitted shifting positions at will from standing, sitting and walking. Tr. 532-33. She also opined that Plaintiff would need to take unscheduled breaks during an 8-hour work day. Tr. 534. The ALJ found that NP Clary's

16

PRFCAQ was not a medical opinion because NP Clary did not diagnose Plaintiff with any medically determinable impairment. Tr. 30. Nonetheless, she discussed the opinion and found it "has little [] substantive value as to her estimation of [Plaintiff's] functional abilities" and is therefore "of *de minimus* persuasive value." Tr. 30.

Plaintiff argues that the ALJ "erroneously failed to assess NP Clary's opinion" because she found that NP Clary did not diagnose Plaintiff with any medically determinable impairment. Pl.'s Reply Br. (Doc. 29) pp. 3-4; Pl.'s Br. (Doc. 27) pp. 13-15. Plaintiff asserts that NP Clary diagnosed Plaintiff with, *inter alia*, chronic back pain, which is recognized as a medically determinable impairment. Pl.'s Br. (Doc. 27) p. 15. She contends that the ALJ's finding otherwise is harmful error because it allowed the ALJ to solely rely on the less restrictive opinion of a non-examining state agency medical consultant to craft Plaintiff's RFC. *Id*. Had the ALJ adopted the limitations assessed by NP Clary, Plaintiff argues that the hypothetical to the VE would have changed, leading to a more restrictive RFC. *Id*.

Assuming *arguendo* that the ALJ erred in concluding that NP Clary's PRFCAQ was not a medical opinion, Plaintiff fails to show that the error is harmful. Critically, the ALJ did not disregard the questionnaire despite finding that it was not a medical opinion. Rather, the ALJ explained that the PRFCAQ had little substantive value and proceeded to compare the limitations asserted therein with NP Clary's treatment notes, objective imaging, physical examinations, and other medical evidence. Tr. 26-28. In finding the opinion "of *de minimus* persuasive value," the ALJ specifically noted mild radiographic findings, normal gait, normal strength, negative straight-leg raising, pain scores reflecting only

17

minimal pain, improvement with medication, and the absence of significant functional deficits. Tr. 28. Thus, the ALJ effectively evaluated NP Clary's opinion, notwithstanding her finding that the PRFCAQ did not meet the qualifications of a medical opinion under the Regulations. Therefore, because the ALJ's reasoning demonstrates that NP Clary's opinion was unpersuasive under the supportability and consistency factors regardless of the finding that it did not constitute a medical opinion, remand is not warranted.

## VI.   CONCLUSION

As explained above, the Court finds that the ALJ did not commit reversible legal error and that substantial evidence supports the Commissioner's decision. Accordingly, it is

ORDERED that the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE this 6th day of August, 2026.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE